**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05 CR 980-1 |
| | ) | |
| CRAIG VENSON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Craig Venson has filed a motion for return of property under Federal Rule of Criminal Procedure 41(g). He seeks the return of $13,862.45 that was seized from him. The government subjected the funds to forfeiture via orders entered in the case of one of Venson's co-defendants, but Venson contends that he was never given proper notice of these forfeiture proceedings. For the reasons stated below, the Court finds the government's evidence of notice insufficient on the present record.

### Facts

In 2005, Venson and seventeen alleged co-conspirators were charged with narcotics offenses. The indictment identified property subject to forfeiture, including $32,500 of drug distribution proceeds, along with firearms, ammunition, and jewelry. This included, it appears, $3,857.45 that the FBI seized from Venson's residence and $10,005 that it seized from a safe deposit box Venson rented from Old Second National

Bank, a total of $13,862.45.[1]

In November 2007, April Hartline—one of Venson's co-conspirators—pled guilty to one of the charges against her. In her plea agreement, Hartline agreed to a judgment of forfeiture relinquishing her rights to the funds seized from Venson's residence and his rented safe deposit box. Hartline Plea Agr., Case No. 05 CR 980, dkt. no. 277, ¶¶ 18–19.

In May 2008, Venson submitted a plea declaration admitting guilt on eighteen of the twenty-four counts charged against him. Venson Plea Decl., Case No. 05 CR 980, dkt. no. 366, ¶ 3. The plea declaration stated that Venson had read his indictment and that his counsel had explained the indictment to him. *Id.* As indicated, the indictment included allegations regarding the forfeiture of $32,500. *Id.* Venson's plea declaration, however, said nothing regarding forfeiture.

Federal Rule of Criminal Procedure 32.2(b) outlines the procedure for obtaining forfeiture in a criminal case. Rule 32.2(b) provides that when the government seeks forfeiture, it must move for a preliminary order of forfeiture. Under Rule 32.2(b), "the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final . . . ." Fed. R. Crim. P. 32.2(b)(2)(B). The sentencing judge must include the forfeiture when orally imposing sentence or must otherwise ensure that the defendant is aware of the forfeiture at the time of sentencing. *Id.* 32.2(b)(4)(B). Lastly, "the court must also include the forfeiture order, directly or by reference, in the judgment, but the court's

---

[1] Venson's Rule 41(g) motion stated that $32,500 was seized, but in his reply, he agreed with the government that the amount seized and at issue is $13,862.45. Def.'s Reply at 2 n.1.

failure to do so may be corrected at any time under Rule 36." *Id.*

On December 5, 2008, Judge Blanche Manning entered judgment against Venson sentencing him to 262 months of imprisonment. Venson Judg., Case No. 05 CR 980, dkt. no. 455. The judgment did not include any reference to forfeiture, nor did Judge Manning address forfeiture at Venson's sentencing hearing. It appears that the government simply neglected to bring up forfeiture at or before Venson's sentencing.

Realizing its omission, the government moved to enter a preliminary order of forfeiture against Venson on December 15, 2008, ten days after the sentencing hearing. The government withdrew this motion on March 10, 2009, evidently realizing that the motion had been filed too late to be legally effective.

At Hartline's sentencing on August 20, 2009, the government moved for a preliminary order of forfeiture against Hartline concerning her interest in funds in the amount of $32,500. Hartline Judg., Case No. 05 CR 980, dkt. no. 564. Judge Manning included a preliminary forfeiture order in Hartline's judgment as required under Rule 32.2(b)(4)(B). *Id.* The order stated that seized funds in the amount of $13,862.45 would be applied to Hartline's forfeiture judgment. A final order of forfeiture was entered in Hartline's case on June 2, 2011.

In August 2015, Venson filed the present motion for return of property. He seeks return of the $13,862.45 that the government seized from him. Venson alleges that, in reviewing the docket sheet from his criminal case, he noted that the government had withdrawn its motion for a preliminary order of forfeiture in his case. Venson says that his attorney had never informed him of the government's withdrawal of the motion.

The government contends that Venson's interest in the funds was forfeited after

neither he nor anyone else interposed a claim or an objection after entry of the preliminary forfeiture order in Hartline's case. The government has done a woefully inadequate job, however, of attempting to establish that adequate notice of the order in Hartline's case or of the impending forfeiture of the money was provided to Venson.

The government has offered evidence that on March 11, 2011, it sent something by certified mail to federal public defender Richard Parsons, the law offices of Moretti and Cook, attorney Roger Dusberger, and to Venson at FCI Greenville, where he was incarcerated. Gov't's Resp., Ex. 6. The first problem is that the government has offered no evidence—such an affidavit from someone with knowledge—regarding what was sent to these people via certified mail. The government's attorney says in his brief that what was sent was a notice regarding the Hartline preliminary forfeiture order, *see* Gov't's Resp., Ex. 8, but under the circumstances the Court will not simply accept counsel's unsworn say-so, particularly given the absence of any statement of counsel's personal knowledge. Second, by the time the certified mail envelopes were sent, Fred Morelli had long since withdrawn as Venson's trial counsel,[2] *see* Case No. 05 CR 980, dkt. no. 143, and Parsons, Venson's appellate counsel, likewise had withdrawn. *See id.*, dkt. no. 604, at 3. Dusberger was Hartline's counsel and never served as Venson's counsel. Finally, the only evidence regarding the certified mail sent directly to Venson is that on March 24, 2011, a person whose signature is illegible and whose title is unknown signed for it at FCI Greenville.

In May 2011, the government filed a motion in Hartline's case seeking entry of a final order of forfeiture. Gov't's Resp., Ex. 9. The notice of motion says that the motion

---

[2] Morelli was replaced by other attorneys as Venson's trial counsel, but the government evidently did not send notice to either of them.

4

was sent to attorney Morelli—who, as indicated, had long since withdrawn as Venson's counsel—and to Venson at FCI Greenville, but only by regular mail. The government has made no effort to show that this motion got to FCI Greenville. The government also contends that Venson's wife Nikea Venson had notice of the forfeiture proceedings as evidenced by letters Morelli sent on her behalf in late March and early April 2011 in which she asserted a claim to $3,254.45 seized from Venson's residence. Gov't's Resp. ¶ 19. The government says, however, that it cannot locate these letters. *Id.* Lastly, the government has provided evidence that it published general notice of a forfeiture proceeding on a governmental forfeiture website (forfeiture.gov) from March 16 to April 14, 2011. Gov't's Am. Supp. Resp., Ex. 12. Venson says, however, that he did not have access to the Internet while incarcerated at FCI Greenville. Def.'s Resp. to Gov't's Supp. Resp. at 2.

**Discussion**

The government does not dispute that the $13,862.45 belonged to Venson. The Due Process Clause of the Fifth Amendment requires that before a person's assets may be forfeited, he must be given notice and an opportunity to be heard. If the person is incarcerated, the "straightforward test of reasonableness under the circumstances" set out in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), is the appropriate analytical framework "regarding the adequacy of the method used to give notice." *Dusenbery v. United States*, 534 U.S. 161, 167–68 (2002). Notice must be reasonably calculated, under all the circumstances, to apprise an incarcerated party of the fact that the government plans to initiate forfeiture proceedings against his property so that he has the opportunity to present an objection. *Id.* at 168.

5

Notice is defective if the government has reason to know that an interested party will not receive it. *Krecioch v. United States*, 221 F.3d 976, 980 (7th Cir. 2000). But due process does not require that an incarcerated party receive actual notice. *Dusenbery*, 534 U.S. at 171. "[S]ending notice by certified mail to the prisoner at the jail, where an authorized employee signs for it" is sufficient. *United States v. Turner*, 494 F. App'x. 647, 648 (7th Cir. 2012) (citing *Chairez v. United States*, 355 F.3d 1099, 1101 (7th Cir. 2004)).

In *Dusenbery*, the Supreme Court noted that the FBI sent certified mail to the residence of the claimant (Dusenbery), to an address where his mother lived, and to the FCI prison where he was incarcerated. *Dusenbery*, 534 U.S. at 164. The Court also discussed the mail-distribution procedures of the correctional facility, including how prison mailroom staff obtained mail for prisoners and how logged, recorded, and tracked mail was received in the mailroom. *Id.* at 165-66. Additionally, the Court considered testimony from an authorized prison officer who actually accepted service on behalf of Dusenbery. *Id.* at 165. A paper trail showing that the notice actually was given to Dusenbery no longer existed because logbooks were retained only for a limited period. *Id.* at 166. The Supreme Court concluded, however, that proof of actual notice to Dusenbery was not necessary and that the government had made a sufficient showing of notice reasonably calculated to reach him. *Id.* at 170. The Seventh Circuit similarly concluded in *Chairez* that it is unnecessary for courts or federal agencies to "inquire into the details of internal mailing delivery systems of jails and prisons." *Chairez*, 355 F.3d at 1101. The court explained that it would be burdensome and impractical to inquire into a prison's internal mail-distribution system, given the variations of such systems

among prisons. *Id.*

In the present case, the government has shown only that it sent something (it is not clear what) to Venson at FCI Greenville by certified mail and that an unknown person at the prison signed for it. This evidence falls short of what was considered sufficient in *Dusenbery*, *Chairez*, or *Turner*. On the question of receipt of whatever was sent, three of the four certified mail envelopes were sent to attorneys who had long since withdrawn from representing Venson or had never represented him in the first place. The fourth receipt shows only that an unknown person at FCI Greenville signed for the certified mail envelope. There is no evidence that whatever came in this envelope entered FCI Greenville's mail-distribution system; there is not even an indication of the recipient's identity or position. The Seventh Circuit made it clear in *Chairez* and *Turner* is clear that for this sort of notice to an incarcerated party to be sufficient, the signatory must be "an authorized jail employee." *Turner*, 494 F. App'x. at 648; *Chairez*, 355 F.3d at 1101. This, presumably, must be someone who is part of the prison's mail-distribution system. *See Dusenbery*, 534 U.S. at 169 (noting the name of and testimony by an authorized employee from the mailroom staff who accepted service).

Finally, under the circumstances, the government's publication of notice on the forfeiture.gov website does not suffice or even contribute to a showing of adequate notice. First of all, the government has not contested Venson's statement that he lacked access to the Internet (or at least to forfeiture.gov) while incarcerated during the relevant period. In any event, where the interested person's whereabouts are known or knowable with reasonable diligence, as was the case here, publication alone does not

7

satisfy due process. The Court explained in *Mullane* that although "[p]ublication may theoretically be available for all the world to see, . . . it is too much in our day to suppose that each or any individual beneficiary does or could examine all that is published to see if something may be tucked away in it that affects his property interests." *Mullane*, 339 U.S. at 320. Publication alone suffices only "where it is not reasonably possible or practicable to give more adequate warning," *id.* at 317, which is not the case here given that the government knew Venson's whereabouts.

### Conclusion

On the record currently before the Court, the government has not shown that Venson was given notice of the forfeiture of the disputed money sufficient to satisfy the government's due process obligations. The government failed to ask the sentencing judge include an appropriate forfeiture order in Venson's own sentence. And its attempt to forfeit Venson's funds via a forfeiture order in the case of his co-defendant Hartline falls short given the deficiencies in the government's evidence on whether and how Venson was given notice of the Hartline forfeiture order. It is conceivable that the government may be able to make such a showing, but it has not done so at this point. On the present record, Venson would appear to be entitled to the return of the $13,862.45 that was seized from his home and his safe deposit box. The Court therefore orders the government to show cause in writing, by no later than August 8, 2016, why the Court should not grant Venson's Rule 41(g) motion. The government's submission, if any, needs to be focused on the deficiencies the Court has identified. The August 8 deadline is a firm date. If the government files a further submission regarding the giving of notice to Venson, Venson will have until August 29, 2016 to

respond.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 18, 2016