IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) </br> ) </br> Plaintiff, ) </br> ) </br> vs. ) </br> ) </br> CRAIG VENSON, ) </br> ) </br> Defendant. ) | Case No. 05 CR 980 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Craig Venson was charged along with multiple co-defendants for participating in a drug trafficking conspiracy, and he eventually pleaded guilty. During its investigation, the government seized property and money belonging to Venson, including $10,005 from his safe deposit box and $3,857.45 from his residence. The government failed to seek forfeiture of these funds at the time of Venson's sentencing. It later obtained a forfeiture order against one of Venson's co-defendants and applied the funds seized from Venson to the co-defendant's judgment. Venson now argues that the government seized his money without due process of law and moves for the property's return under Federal Rule of Criminal Procedure 41(g). For the reasons stated below, the Court denies Venson's motion.

### Background

In 2005, Venson was charged with narcotics offenses relating to his involvement in a drug trafficking operation. The charges included possession with intent to distribute

and distribution of cocaine and heroin, as well as conspiracy. The government brought similar charges against seventeen alleged co-conspirators, including April Hartline. The indictment identified $32,500 of drug distribution proceeds as property subject to forfeiture, including $10,005 held by Venson in a safe deposit box and $3,857.45 that the FBI had seized from Venson's residence.

In November 2007, Hartline entered into a plea agreement, in which she agreed to an entry of judgment of forfeiture "relinquish[ing] any right, title, or interest she has" in the seized money and property. Hartline Plea Agr., Case No. 05 CR 980, dkt. no. 277, ¶ 19. In 2008, Venson entered a blind plea of guilty to eighteen of the twenty-four counts against him. Venson Plea Decl., Case No. 05 CR 980, dkt. no. 366, ¶ 3. In conjunction with his guilty plea, Venson filed a "plea declaration" that made no mention of forfeiture. In December 2008, Judge Blanche Manning sentenced Venson to 262 months in prison. The government did not move for forfeiture in connection with Venson's sentencing, and the judgment entered by Judge Manning did not include any reference to forfeiture.

Ten days after Venson's sentencing hearing, the government moved to enter a preliminary order of forfeiture against Venson. The government sought forfeiture of Venson's interest in various items, including funds seized during the investigation. Specifically, the government sought forfeiture of Venson's interest in the $10,005 seized from his safe deposit box and the $3,857.45 seized from his residence. Federal Rule of Criminal Procedure 32.2(b), however, requires entry of a preliminary order of forfeiture prior to sentencing in order to permit the parties to suggest modifications before the order becomes final. Fed. R. Crim. P. 32.2(b)(2)(B). Realizing that it had filed the

2

motion too late, the government withdrew the forfeiture motion in March 2009.

At Hartline's sentencing in August 2009, the government moved for a preliminary order of forfeiture of Hartline's interest in the seized funds. Hartline Judg., Case No. 05 CR 980, dkt. no. 564. Judge Manning included a preliminary forfeiture order in Hartline's judgment as required under Rule 32.2(b)(4)(B). *Id.* The preliminary forfeiture order stated that seized funds in the amount of $13,862.45 would be applied to Hartline's forfeiture judgment. A final order of forfeiture was entered in June 2011. The final order stated that the interests of Hartline "and any other third party" in the seized funds were forfeited to the United States. Hartline Forf. Order, Case No. 05 CR 980, dkt. no. 564.

In August 2015, Venson filed the present motion for return of the $13,862.45 the government applied to Hartline's judgment. Venson alleges that he retained an interest in this property, that he never received notice of the forfeiture, and that the steps taken by the government to notify him were constitutionally inadequate. The government contends that the final order of forfeiture in Hartline's case terminated Venson's interest in the money. It argues that the procedures that it followed before obtaining the final order in Hartline's case were sufficient to put Venson on notice that his interest in the money was at stake and to give him an opportunity to object (which Venson did not do).

The government has provided the following evidence of its attempt to notify Venson of the forfeiture. Dorothy Cuadra, a paralegal specialist with the United States Attorney's Office, says that on March 18, 2011 she sent a package to the United States Marshals Service (USMS) directing the USMS to provide Venson notice of the preliminary order of forfeiture in Hartline's case. Government's Suppl. Mem. Addressing

3

Evidentiary Issues Regarding Service of Process, Ex. A (Cuadra Aff.) ¶¶ 1, 4. The package included instructions to notify the following individuals of the forfeiture: Nikea Venson; Fred Morelli Jr., Venson's attorney until sometime in 2006; Richard H. Parsons at the Central District of Illinois Federal Defender's office, who had represented Venson in his appeal, which had concluded over a year earlier, in February 2010; Hartline's attorney Roger H. Dusberger; and Venson at the federal prison in Greenville where he is serving his sentence. *See id.*, Attachment A. The package included copies of the notice of forfeiture and the preliminary order of forfeiture in Hartline's case to be sent to each recipient. *Id.* ¶¶ 5–6.

The notice of forfeiture that the government sent to these persons states that "in the case of U.S. v. April Hartline, et al., Court Case Number 05 CR 980-5," the court entered an order condemning the following property: "10,005.00 United States Currency . . . seized from Craig L. Venson on December 15, 2005 at Old Second National Bank, Safety Deposit Box Number 98" and "$3,857.45 United States Currency . . . seized from Nikea Venson on December 07, 2005." *Id.*, Attachment C. The notice states that the "United States hereby gives notice of its intent to dispose of the forfeited property in such manner as the United States Attorney General may direct." *Id.* It further indicates that "[a]ny person, other than the defendant(s) in this case, claiming interest in the forfeited property must file a petition within 60 days" of March 16, 2011. *Id.*

The process receipt and return for the copy that the USMS allegedly sent to Venson indicates that it was sent via certified mail and includes the receipt number 7009 0820 0002 0674 0676. *Id.*, Attachment B. Cuadra also states that notice of the

4

forfeiture was posted on www.forfeiture.gov from March 16, 2011 until April 14, 2011. Government's Suppl. Resp. to Movant Craig Venson's Mot. for Return of Property, Ex. 12.

The government also offers the declaration of Cynthia Villarruel, the district asset forfeiture coordinator for the USMS. In her declaration, Villarruel describes in general the notification process at the USMS. *See* Government's Suppl. Mem. Addressing Evidentiary Issues Regarding Service of Process, Ex. B (Villarruel Decl.). Villarruel states that the United States Attorney's Office typically includes copies of Form USM 285 in the package sent to the USMS. *Id.* ¶ 4. The top half of the form lists the addresses of the intended recipients, and the bottom half leaves space for the USMS personnel to indicate how the notice was served. *Id.* ¶ 5. Villarruel reviewed the USMS's copy of this form for the forfeiture notice at issue here and determined that Jessica Smith-Crenshaw, a contractor who no longer works for the USMS, mailed the package to Venson. *Id.* at ¶ 8. Villarruel states that Smith-Crenshaw likely wrote the note on the form indicating that the package was sent via certified mail and the corresponding receipt number. The form indicates that the package was sent to Venson on March 24, 2011, and the receipt indicates that someone at FCI Greenville signed for the package on the same day. *See id.*; *see also id.*, Attachment A.

The government also offers the declaration of Carrie Rodgers, a supervisory correctional systems specialist at FCI Greenville. Rodgers states that the signature on the certified mail receipt belongs to Angelo Gutierrez, a former correctional systems officer at Greenville. Government's Suppl. Mem. Addressing Evidentiary Issues Regarding Service of Process, Ex. C (Rodgers Decl.) ¶ 3. Gutierrez worked at the

Greenville prison for 23 years until his retirement in March 2015. *Id.* Rodgers states that she worked with Gutierrez for seven years, both as his co-worker and as his supervisor, and recognizes the signature on the form as his. *Id.* She also describes the standard procedures for mail distribution at FCI Greenville. Rodgers indicates that after an employee, such as Gutierrez, signs for a package, the package is sorted into a pile of inmate mail. *Id.* ¶ 5. Inmate mail is later sorted by housing unit and each piece of certified mail is recorded in a log. *Id.* An employee tasked with delivering the mail logs out the certified mail, and the inmate recipient signs another copy of the log when the mail is delivered to him. *Id.* The government has also offered a copy of the mail log from March 25, 2011, which indicates that Venson signed for a certified mail package with the receipt number 7009 0820 0002 0674 0676. Government's Suppl. to Its Suppl. Mem. Addressing Evidentiary Issues Regarding Service of Process, Ex. A (Rodgers Decl.), Attachment A.

    Finally, the government offers the affidavit of Patty Jo Stewart, a supervisory legal administrative specialist at the United States Attorney's Office. Stewart states that she would have been the person who prepared the electronic notice of the government's motion for final order of forfeiture that was filed via the court's ECF system on May 19, 2011. Government's Suppl. Mem. Addressing Evidentiary Issues Regarding Service of Process, Ex. D (Stewart Aff.) ¶ 2. Stewart further states that she would have mailed the motion to the individuals listed on the notice of motion, which in this case are Morelli and Venson. *Id.* ¶ 2 & Attachment A. The government has also provided the mail log from the Greenville prison for May 23, 2011, which reflects that Venson signed for a piece of legal mail on that date. Rodgers Decl., Attachment B.

**Discussion**

Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). This rule "provides a mechanism by which criminal defendants may recover property seized by the [g]overnment." *United States v. Stevens*, 500 F.3d 625, 627–28 (7th Cir. 2007). Venson claims that the government unlawfully took possession of the $10,005 from his safe deposit box and the $3,857.45 recovered during a search of his home when it failed to provide him with adequate notice of the forfeiture, in violation of the Due Process Clause of the Fifth Amendment. Venson appears to raise two challenges to the sufficiency of the government's attempt at notice. His first argument is that he never received the papers the government alleges that it sent, and that the government's attempt to send those papers was inadequate. Venson's second argument is that even if he had received the papers that the government sent, they did not adequately put him on notice that his interest in the seized funds was at risk. He also contends that having missed the opportunity to obtain forfeiture at the time of his sentencing, the government could not forfeit his interest in the funds via Hartline's sentencing and the proceedings that followed that sentencing.

Under the Due Process Clause, when a government seeks to forfeit an individual's property, the individual first must be given notice and the opportunity to be heard. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002). The standard for due process was announced in *Mullane v. Central Hanover Bank & Trust, Co.*, 339 U.S. 306 (1950), and considers whether notice was "reasonably calculated under all the circumstances to apprise petitioner of the pendency of the cash forfeiture." *Dusenbery*,

7

534 U.S. at 167–68 (internal quotation marks omitted). Due process does not require actual notice so long as the government "acted reasonably in selecting means likely to inform the persons affected." *Krecioch v. United States*, 221 F.3d 976, 980 (7th Cir. 2000). "Service by certified mail has long been considered an acceptable means to provide notice." *Chairez v. United States*, 355 F.3d 1099, 1102 (7th Cir. 2004). Notice is inadequate, however, if the government knew or had reason to know that the claimant would not receive it. *Krecioch*, 221 F.3d at 980.

**I.  Means of delivery**

The government has presented evidence sufficient to demonstrate that the methods it used to deliver notice of the forfeiture order to Venson were adequate under the Due Process Clause. It has provided statements from several government employees outlining the steps taken to mail the notice.[1] Cuadra prepared copies of the notice of forfeiture and sent them to the USMS, where someone (likely Smith-Crenshaw) sent them on to Venson at the Greenville prison. Rodgers stated that the signature confirming receipt of the package by the prison belongs to Gutierrez, a former employee of the prison. Rodgers also stated that the mail would then have been logged and hand-delivered by staff to Venson, who then would have been required to sign for the delivery. Rodgers has provided the mail logs showing that Venson signed for a certified mail delivery sharing the same receipt number as the delivery sent by the

---

[1] After briefing was completed in this case, the government made an *in camera* filing advising that one of its affiants in connection with the present dispute had been given a one-day suspension for an unrelated infraction and asking the Court to determine that this was not *Brady* material that needed to be produced to Venson. The Court agrees. The evidence is not probative of the declarant's character for truthfulness, and thus it cannot be used to impeach her credibility. *See* Fed. R. Evid. 608(b).

USMS only one day after the USMS sent the notice of forfeiture on March 24.

This procedure mirrors the one that the Supreme Court found to be constitutionally adequate in *Dusenbery*. There, the FBI sent certified mail to the petitioner at the prison where he was incarcerated. *Dusenbery*, 534 U.S. at 168–69. At that prison, staff customarily traveled to the post office each day to collect mail. *Id.* at 169. Certified mail was then entered into a logbook in the prison's mailroom. *Id.* A staff member signed for the certified mail before removing it from the mail room and delivering it to the recipient. *Id.* The officer working in the mailroom during the relevant time period testified regarding these procedures and that he signed the mail receipt for the delivery in question. *Id.* at 165. The government had no physical records of the prison logbooks. *Id.* at 166. The Court concluded that this system was reasonably calculated to give notice as required by due process. *Id.* at 172–73. The nearly identical means used by the government in this case were likewise reasonably calculated to provide Venson with notice.

Venson argues that the procedures in this case were inadequate because the government has not provided statements from either Smith-Crenshaw or Gutierrez. Venson contends that, without these statements, the government cannot show that what Smith-Crenshaw mailed was actually the notice of forfeiture nor that Gutierrez actually passed this notice of forfeiture along to be delivered to Venson. But as the Court has indicated, due process does not require actual notice as long as the government acted reasonably. *Krecioch*, 221 F.3d at 980. The government has provided evidence of its entire process from start to finish and, where it lacks statements from the actual sender or recipient, has provided corroborating statements

9

from other employees. Further, unlike in *Dusenbery*, the government has provided the actual prison mail logs indicating that Venson signed for a certified mail delivery bearing the same receipt number as the package sent by the USMS. The government has clearly demonstrated that the procedures it used to send notice to Venson of the forfeiture order were reasonably calculated to provide him with notice. Indeed, the Court is confident in finding that Venson received actual notice of the forfeiture proceeding, despite his protestation to the contrary.

## II.   Content of the notice

Venson next argues that even if he had actually received the notice of forfeiture sent by the government, the document as written would not have put him on notice that his interest in the seized funds was at stake. Venson argues essentially that the notice of forfeiture indicates only that Hartline's interest was subject to forfeiture and that this is inadequate to constitute notice that *his* interest in the funds was also subject to forfeiture. Thus, Venson argues, the government failed to satisfy due process.

Criminal forfeiture proceedings are *in personam* and therefore determine the government's title in property only as against named defendants. *United States v. Tit's Cocktail Lounge*, 873 F.2d 141, 143 (7th Cir. 1989). For this reason, the government cannot take full ownership of property seized through criminal forfeiture until it has provided notice to all third parties with a potential interest in the property. *See id.* Due process requires the government to put a reasonable recipient on notice that he must take further action, or at least further inquiry, to protect his interests. *See Nazarova v. INS*, 171 F.3d 478, 483 (7th Cir. 1999) (discussing notice in the deportation context) (citing *Toure v. United States*, 24 F.3d 444, 446 (2d Cir. 1994)).

The notice of forfeiture that the government sent to Venson satisfies the requirements of due process. The notice expressly identifies the forfeited funds as the money seized from Venson and his wife on two separate dates. Cuadra Aff. at Attachment C. The notice also indicates that a district court entered an order forfeiting these funds to the government, and that the government intended to dispose of the funds in such manner as the United States Attorney general may direct. *Id.* It also states that anyone claiming an interest in the funds "must file a petition within 60 days." This was sufficient to put Venson on notice that the government intended to take possession of the money seized from him during the investigation and that if he wanted to prevent this, he needed to file something claiming an interest in the funds. The fact that the notice stated that the forfeiture arose out of the case "U.S. v. April Hartline, et al." does not make the notice inadequate, because a reasonable person in Venson's position would have been on notice that the government was taking possession of the same funds that it had seized from his person and from his home.

More importantly, the notice explains the procedures by which Venson could have contested the forfeiture, describing the petition he should file and where the petition should be sent. The government therefore properly provided him with the opportunity to contest forfeiture of his interest in the funds. *See Willis v. United States*, 787 F.2d 1089, 1093 (7th Cir. 1986) (finding that notice satisfied due process requirements where it "not only specified the procedures and time limits attendant upon contesting probable cause in the district court, but also gave the name and phone number of a DEA official to whom [the defendant] could address questions").

The government flubbed its initial attempt to forfeit the property when it did not

take the appropriate steps prior to or during Venson's sentencing hearing to seek forfeiture of his interest in the property. And if all the government had done after that was to seek forfeiture via Hartline's sentencing hearing, that would not have been sufficient to terminate Venson's interest in the property, because he was not a party to that sentencing. But the very purpose of the proceedings that took place after that—sending notice of the government's intention to forfeit the funds and advising recipients of their right to challenge the forfeiture—was to determine and, if necessary, adjudicate the interests of everyone other than Hartline in the funds. Though the government targeted Venson's interest in the property in a roundabout way, a route that is not advisable as a general matter, it properly provided Venson with notice and the opportunity to be heard. For these reasons, the Court concludes that the government satisfied the requirements of due process and lawfully took Venson's interest in the seized funds.

## Conclusion

For the foregoing reasons, the Court denies Venson's motion for return of his funds in the amount of $10,005 and $3,857.45 [dkt. no. 776].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 3, 2017